Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>CHANGE HEALTHCARE INC., NEIL E. DE CRESCENZO, HOWARD L. LANCE, NELLA DOMENICI, NICHOLAS L. KUHAR, DIANA MCKENZIE, BANSI NAGJI, PHILIP M. PEAD, PHILLIP W. ROE, NEIL P. SIMPKINS, and ROBERT J. ZOLLARS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Change Healthcare Inc. ("Change Healthcare" or the "Company") and the members of Change Healthcare's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Change Healthcare will be acquired by Optum, the health services business platform of UnitedHealth Group Incorporated ("UnitedHealth"), through UnitedHealth's subsidiary, Cambridge Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 6, 2021, Change Healthcare and UnitedHealth issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated January 5, 2021 (the "Merger Agreement") to sell Change Healthcare to UnitedHealth. Under the terms of the Merger Agreement, each Change Healthcare stockholder will receive $25.75 in cash for each share of Change Healthcare common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $7.84 billion.

3. On March 5, 2021, Change Healthcare filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Change Healthcare stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company insiders' potential conflicts of interest; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. ("Goldman"); and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Change Healthcare's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company operates and maintains executive offices in this District; (ii) one or more of the defendants either resides in or maintains offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Change Healthcare.

9. Defendant Change Healthcare is a Delaware corporation, with its principal executive offices located at 424 Church Street, Suite 1400 Nashville, Tennessee 37219 and offices located at 2100 Powell Street, 5th Floor, Emeryville, California 94608. The Company is a leading independent

healthcare technology company, focused on accelerating the transformation of the healthcare system through its Change Healthcare Platform. Change Healthcare's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CHNG."

10. Defendant Neil de Crescenzo ("de Crescenzo") has been President and Chief Executive Officer ("CEO") of the Company since 2013, and has been a director since 2017.

11. Defendant Howard L. Lance ("Lance") is the Chairman of the Board and has been a director of the Company since 2017.

12. Defendant Nella Domenici ("Domenici") has been a director of the Company since 2020.

13. Defendant Nicholas L. Kuhar ("Kuhar") has been a director of the Company since 2019.

14. Defendant Diana McKenzie ("McKenzie") has been a director of the Company since 2019.

15. Defendant Bansi Nagji ("Nagji") has been a director of the Company since 2017.

16. Defendant Philip M. Pead ("Pead") has been a director of the Company since 2017.

17. Defendant Phillip W. Roe ("Roe") has been a director of the Company since 2017.

18. Defendant Neil P. Simpkins ("Simpkins") has been a director of the Company since 2017. Defendant Simpkins has also served as a senior managing director in the Private Equity Group of the Blackstone Group Inc. ("Blackstone"), the Company's largest stockholder, owning approximately 20% of Change Healthcare's outstanding shares, since December 1999.

19. Defendant Robert J. Zollars ("Zollars") has been a director of the Company since 2017.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. UnitedHealth is a Delaware corporation, with its principal executive offices located at 9900 Bren Road East, Minnetonka, Minnesota 55343. It is a diversified health care company, offering a diverse range of products and services through its two distinct business platforms: UnitedHealthcare, which provides health benefits, and Optum, which provides health services. Through UnitedHealthcare and Optum, in 2019, UnitedHealth Group processed nearly a trillion dollars in gross billed charges and UnitedHealth Group managed more than $250 billion in aggregate health care spending on behalf of the customers and consumers UnitedHealth Group serves. UnitedHealth's common stock trades on the New York Stock Exchange under the ticker symbol "UNH."

22. Merger Sub is a Delaware corporation and a direct, wholly-owned subsidiary of UnitedHealth.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. Change Healthcare is a leading independent healthcare technology platform that provides data and analytics-driven solutions to improve clinical, financial, administrative, and patient engagement outcomes in the U.S. healthcare system. The Company offers a comprehensive suite of software, analytics, technology-enabled services and network solutions that drive improved results in the complex workflows of healthcare system payers and providers. Change Healthcare's solutions are designed to improve clinical decision making, simplify billing, collection and payment processes, and enable a better patient experience. The Company offers comprehensive, end-to-end solutions with modular capabilities to address customer needs. Working with customers to analyze workflows used before, during, and after care has been delivered to patients, Change Healthcare designs and commercializes innovative solutions for various points in the healthcare delivery continuum.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24. The Company's offerings range from discrete data and analytics solutions to broad enterprise-wide solutions, which include workflow software and technology-enabled services that help customers achieve operational objectives. As payers and providers become larger and more sophisticated, and manage increasingly complex workflows, the Company believes they will increasingly seek strategic partners with scale and comprehensive, high-value solutions designed to scale.

25. The Company's Intelligent Healthcare Network was created to facilitate the transfer of data among participants and is one of the largest clinical and financial healthcare networks in the U.S. In the fiscal year ended March 31, 2020, Change Healthcare facilitated over 15 billion healthcare transactions and approximately $1.5 trillion in adjudicated claims or more than one-third of all U.S. healthcare expenditures. Change Healthcare serves the vast majority of U.S. payers and providers. Its customer base includes approximately 2,400 government and commercial payer connections, 1,000,000 physicians, 125,000 dentists, 39,000 pharmacies, 6,000 hospitals and 700 laboratories. This network transacts clinical records for over 85 million unique patients, approximately one-quarter of the estimated total U.S. population. With insights gained from its pervasive network, extensive applications and analytics portfolio, and its services operations, Change Healthcare has designed analytics solutions that include trusted, industry-leading franchises supported by extensive intellectual property and regularly updated content.

26. On February 3, 2021, Change Healthcare announced its third quarter fiscal 2021 financial results, reporting total revenue of $785.1 million, and net income of $2.2 million. Adjusted net income was $110.1 million, as compared to adjusted net income of $106.3 million in the same period of the prior year. Adjusted EBITDA was $233.4 million for the period, while the Company reported adjusted EBITDA of $232.6 million in the corresponding period of the prior year. Additionally, Change Healthcare announced an agreement with Carnegie Mellon University's Delphi

Research Group for the launch of Delphi's enhanced COVIDcast real-time COVID-19 indicators. COVIDcast takes a further step by adding de-identified COVID-19 claims from Change Healthcare to its unique combination of survey, testing, and mobility data. The Company also launched Social Determinants of Health Analytics, an innovative national data resource to help health systems, insurers, and life sciences organizations explore how geodemographic factors affect patient outcomes. Commenting on the Company's performance and looking to the future, defendant de Crescenzo stated:

> Our third quarter results demonstrate the strength of the Change Healthcare platform, and our ability to execute well on our growth strategy and financial objectives while navigating the pandemic. During the quarter we saw continued demand across our platform. By advancing connectivity and driving innovation we have established a strong foundation to accelerate the delivery of the innovations and efficiencies essential to a brighter future for health care.

**The Proposed Transaction**

27.     On January 6, 2021, Change Healthcare and UnitedHealth issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> EDEN PRAIRIE, Minn. & NASHVILLE, Tenn.--Jan. 6, 2021-- Optum, a diversified health services company and part of UnitedHealth Group (NYSE: UNH), and Change Healthcare (NASDAQ: CHNG), a health care technology leader, have agreed to combine. Change Healthcare will join with OptumInsight to provide software and data analytics, technology-enabled services and research, advisory and revenue cycle management offerings to help make health care work better for everyone.
>
> This combination unites two technology and service companies focused on serving health care. Their combined capabilities will more effectively connect and simplify core clinical, administrative and payment processes - resulting in better health outcomes and experiences for everyone, at lower cost. Change Healthcare brings key technologies, connections and advanced clinical decision, administrative and financial support capabilities, enabling better workflow and transactional connectivity across the health care system. Optum brings modern analytics, comprehensive clinical expertise, innovative technologies and extensive experience in improving operational and clinical performance.
>
> "Together we will help streamline and inform the vital clinical, administrative and payment processes on which health care providers and payers depend to serve patients," said Andrew Witty, President of UnitedHealth Group and CEO of Optum.

"We're thrilled to welcome Change Healthcare's highly skilled team to create a better future for health care."

"This opportunity is about advancing connectivity and accelerating innovations and efficiencies essential to a simpler, more intelligent and adaptive health system. We share with Optum a common mission and values and importantly, a sense of urgency to provide our customers and those they serve with the more robust capacities this union makes possible," said Neil de Crescenzo, President and CEO of Change Healthcare. Upon closing, Mr. de Crescenzo will serve as OptumInsight's chief executive officer, leading the combined organization.

Some of the key opportunities to enhance the health care system include:

- The combined company will help clinicians make the most informed and clinically advanced patient care decisions, more quickly and easily. Change Healthcare brings widely adopted technology for integrating evidence-based clinical criteria directly into the clinician's workflow, while Optum's clinical analytics expertise and Individual Health Record can strengthen the evidence base needed to deliver effective clinical decision support at the point of care. This can ensure appropriate sites of care and consistently achieve the best possible health, quality and cost outcomes.
- Complexities across the health system result in significant levels of administrative waste. The combined company will be well positioned to make health care simpler, more efficient and more effective. A key opportunity is to enhance with insights drawn from billions of claims transactions using Change Healthcare's intelligent health care network, combined with Optum's advanced data analytics. This will support significantly faster, more informed and accurate services and processing.
- Change Healthcare's payment capacities combined with Optum's highly automated payment network will simplify financial interactions among care providers, payers and consumers and accelerate the movement to a more modern, real-time and transparent payment system. This will ensure physicians get paid more quickly, accurately and reliably, and provide consumers the same simplicity and convenience managing their health care finances they experience with other transactions. Change Healthcare brings deep patient communication capabilities, engaging more than 200 million unique individuals each year. Integrating these engagements with people's health financial benefits will make it simpler for consumers and enhance alignment with incentive programs which reward healthy behaviors.

"Change Healthcare has made significant progress executing its strategic objectives, including advancing innovation, accelerating growth and improving the effectiveness of the U.S. health system," said Howard Lance, Chairman of the Board of Directors of Change Healthcare. "We are delighted to have in Optum a partner that shares a common vision of creating a better future for health care for the people and communities we serve and see this combination as in the best interests of all of our stakeholders."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The agreement calls for the acquisition of Change Healthcare's common stock for $25.75 per share in cash and is expected to close in the second half of 2021, subject to Change Healthcare shareholders' approval, regulatory approvals and other customary closing conditions. Private equity funds affiliated with The Blackstone Group, which own approximately 20% of the common stock of Change Healthcare, have agreed to vote the shares they control in favor of the combination.

The acquisition is expected to be accretive to UnitedHealth Group's net and adjusted earnings per share by approximately $0.20 and $0.50 respectively in 2022, advancing strongly in subsequent years, inclusive of investments to accelerate technology, system and product integration and development activities to more quickly deliver the value of this combination to all health care system stakeholders. Adjusted earnings exclude from net earnings only the after-tax non-cash amortization expense pertaining to acquisition-related intangible assets.

**Insiders' Interests in the Proposed Transaction**

28. Change Healthcare insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Change Healthcare.

29. Notably, certain Company insiders have secured new positions for themselves with the combined company. For example, following completion of the Proposed Transaction:

- Defendant de Crescenzo will become CEO of OptumInsight, a business unit of UnitedHealth, with a base salary of $1,000,000 and target incentive bonus of $1,750,000, an initial sign-on grant of non-qualified stock options with a grant date fair value of $2,250,000, an initial sign-on grant of restricted stock units ("RSU") with a grant date fair value of $2,250,000, a long-term incentive equity award for 2022 with a target grant date fair value of $7,250,000, as well as severance benefits;

- Kriten Joshi ("Joshi"), EVP and President of Change Healthcare's Network Solutions, will become the CEO of UnitedHealth's Network Solutions business unit, with an initial sign-on grant of non-qualified stock options with a grant date fair value of $500,000, an initial sign-

on grant of RSUs with a grant date fair value of $500,000, a long-term incentive equity award for 2022 with a target grant date fair value of $1,250,000, as well as severance benefits.

- Thomas Laur ("Laur"), EVP and President of Change Healthcare's Technology Enabled Services, will become the CEO of UnitedHealth's Technology Enabled Solutions business unit, with an initial sign-on grant of non-qualified stock options with a grant date fair value of $500,000, an initial sign-on grant of RSUs with a grant date fair value of $500,000, a long-term incentive equity award for 2022 with a target grant date fair value of $1,250,000, as well as severance benefits.

30. Moreover, the Proxy Statement provides that Change Healthcare expects to make 2021 annual grants of long-term incentive awards prior to the closing. The annual grants will be in the form of RSUs and will be subject to substantially the same terms as the current outstanding RSUs, including conversion into UnitedHealth Group RSUs in connection with the merger. The grant date fair value of these awards may be as much as: $7,200,000 for defendant de Crescenzo; $3,900,000 for Fredrik Eliasson; $1,500,000 for each of Roderick H. O'Reilly, Laur, Joshi, August Calhoun and Steven Martin, and $1,200,000 for each of Loretta E. Cecil, Linda Whitley-Taylor and W. Thomas McEnery.

31. In addition, if they are terminated in connection with the Proposed Transaction, Change Healthcare's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Golden Parachute Compensation (1)**

| Named Executive Officer | Cash (2) | Equity (3) | Pension/ NQDC (4) | Perquisites/ Benefits (5) | Tax Reimbursement (6) | Other | Total (7) |
|---|---|---|---|---|---|---|---|
| Neil de Crescenzo<br>President and<br>Chief Executive Officer | $5,500,000 | $32,196,602 | — | $ 12,000 | — | — | $37,708,602 |
| Fredrik Eliasson<br>Executive Vice<br>President and CFO | $1,202,500 | $14,376,781 | — | $ 27,531 | — | — | $15,606,812 |
| Kriten Joshi<br>Executive Vice President, and President Network Solutions | $ 834,134 | $ 7,609,724 | — | $ 12,000 | — | — | $ 8,455,858 |
| Thomas Laur<br>Executive Vice President and President, Technology Enabled Services | $ 925,000 | $ 5,875,107 | — | $ 12,000 | — | — | $ 6,800,107 |
| Roderick O'Reilly<br>Executive Vice President and President, Software Analytics (8) | $ 981,103 | $ 7,320,013 | — | $ 3,220 | — | — | $ 8,304,336 |

## The Proxy Statement Contains Material Misstatements or Omissions

32.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Change Healthcare's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company insiders' potential conflicts of interest; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

34.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Change Healthcare insiders.

35.     According to the Proxy Statement, in or around early December 2020, UnitedHealth expressed interest in speaking with defendant Crescenzo about post-closing employment. Proxy Statement at 40. UnitedHealth ultimately entered into employment agreements with numerous Change Healthcare executives, including "[defendant] Crescenzo; Kris Joshi, Executive Vice

President and President, Network Solutions; Steven Martin, Executive Vice President of Enterprise Technology; August Calhoun, Executive Vice President and President, Sales and Operations; Thomas Laur, Executive Vice President and President, Technology Enabled Solutions; and W. Thomas McEnery, Executive Vice President and Chief Marketing Officer." *Id.* at 43.

36. The Proxy Statement, however, fails to disclose whether any of UnitedHealth's proposals or indications of interest, including UnitedHealth's October 19, 2020 and November 20, 2020 indications of interest, mentioned management retention or participation in the combined company. The Proxy Statement further fails to disclose whether Change Healthcare and UnitedHealth executives discussed the potential post-close employment for Change Healthcare executives between May 2020, when UnitedHealth first expressed interest in a potential transaction, and December 2020.

37. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Change's Executive Officers and Directors in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Financial Analyses***

39. The Proxy Statement also omits material information regarding Goldman's financial analyses.

40. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without

this information, as described below, Change Healthcare's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

41. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the "Tax Attribute Projections" utilized in the analysis, to the extent different from the "Net Impact to Cash Flows from Tax Attributes" set forth on page 57 of the Proxy Statement; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.75% to 7.75%; (iii) quantification of Change Healthcare's terminal value; and (iv) the number of fully diluted shares of Change Healthcare.

42. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) one-year forward Adjusted EBITDA for calendar years 2021 to 2023 utilized in the analysis[1]; (ii) Change Healthcare's net debt as of December 31, 2021, 2022, and 2023; (iii) quantification of the inputs and assumptions underlying the discount rate of 7.5%; and (iv) the number of fully diluted shares of Change Healthcare.

---

[1] The Proxy Statement sets forth that:

> Goldman Sachs first calculated the implied EV of Change as of December 31 for each of the calendar years 2021 to 2023, by multiplying the one-year forward adjusted earnings before interest, taxes, depreciation and amortization, adjusted to exclude non-recurring items and stock-based compensation (Adjusted EBITDA) as of such date (using the Projections)[.]

*Id.* at 62. The Proxy Statement, however, sets forth a different calculation for the Company's unlevered free cash flows set forth in the "Certain Financial Projections." *See id.* at 57 ("'Adjusted EBITDA' means net income (loss) before net interest expense, income tax provision (benefit), depreciation and amortization, as adjusted to exclude the impact of certain items that are not reflective of Change's core operations.").

43. Without such undisclosed information, Change Healthcare stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

44. The omission of this material information renders the statements in the "Opinion of Change's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

45. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

46. For example, the Proxy Statement fails to disclose material information related to the tax receivable agreements ("TRAs") between Change Healthcare and certain investment funds affiliated with Blackstone, the Company's largest stockholder, owning approximately 20% of Change Healthcare's outstanding shares. On December 28, 2020, UnitedHealth's counsel provided a draft letter agreement ("TRA Letter Agreement") that it requested Change Healthcare enter into with the parties to the TRAs. Between December 30, 2020 and January 4, 2020, counsel for UnitedHealth and Blackstone negotiated the terms of the TRA Letter Agreement. Critically, concurrently with the negotiation of the TRA Letter Agreement, counsel for UnitedHealth and Blackstone negotiated a draft support agreement ("Support Agreement"), which provided for a commitment and proxy by certain funds affiliated with Blackstone to vote all of their shares (approximately 20% of Change Healthcare's outstanding shares) in favor of the Proposed Transaction.

47. In connection with the TRA Letter Agreement, the Proxy Statement sets forth:

> Change has agreed to make certain payments with respect to realized tax savings, which vary depending upon a number of factors, including the amount and timing of the taxable income Change generates in the future and the tax rate then applicable. Concurrently with the entry into the Merger Agreement, UnitedHealth Group, Change and the TRA Letter Agreement Parties entered into the TRA Letter Agreement pursuant to which, among other matters, UnitedHealth Group will direct Change, pursuant to the terms of the Merger Agreement, to exercise Change's right, in connection with the Closing, to terminate each of the Applicable TRAs by making the respective early termination payments specified under each Applicable TRA, pursuant to the applicable discount rate set forth in each Applicable TRA and the methodology set forth in the TRA Letter Agreement, in accordance with the terms of each such Applicable TRA. The TRA Letter Agreement will terminate upon the valid termination of the Merger Agreement.

*Id.* at 107. The Proxy Statement fails, however, to disclose the details of the payments Blackstone is entitled to receive under the TRA Letter Agreement, and the details of the negotiations thereof.

48. The omission of this material information renders the statements in the "Background of the Merger" and "TRA Letter Agreement" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Change Healthcare will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Company insiders' potential conflicts of interest, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

56.     Plaintiff repeats all previous allegations as if set forth in full.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

57. The Individual Defendants acted as controlling persons of Change Healthcare within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Change Healthcare, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

60. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Change Healthcare's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Change Healthcare, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Change Healthcare stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| | |
|---|---|
| Dated: March 19, 2021 | **WEISSLAW LLP** <br> Joel E. Elkins <br><br> By: */s/ Joel E. Elkins* <br><br> Joel E. Elkins <br> 9100 Wilshire Blvd. #725 E. <br> Beverly Hills, CA 90210 <br> Telephone: 310/208-2800 <br> Facsimile: 310/209-2348 <br>           -and- <br> Richard A. Acocelli <br> 1500 Broadway, 16th Floor <br> New York, NY  10036 <br> Telephone: 212/682-3025 <br> Facsimile: 212/682-3010 <br><br> *Attorneys for Plaintiff* |